[Cite as *State v. Robinson*, 2025-Ohio-4342.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO, | Case No. 2024CA00160 |
| Plaintiff - Appellee | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Stark County Court of Common Pleas, Case No. 2024-CR-0387 |
| WILLIAM ROBINSON, | |
| | Judgment:   Affirmed |
| Defendant – Appellant | |
| | Date of Judgment Entry: September 12, 2025 |

**BEFORE:** Craig R. Baldwin; Kevin W. Popham; David M. Gormley, Appellate Judges

**APPEARANCES:** KYLE STONE, Prosecuting Attorney, CHRISTOPHER A. PICKARSKI, Assistant Prosecuting Attorney for Plaintiff-Appellee; GEORGE URBAN, for Defendant-Appellant.

*Baldwin, P.J.*

{¶1}    The appellant, William Robinson, appeals his conviction and sentence for one count of Endangering Children in the Court of Common Pleas of Stark County, Ohio. The appellee is the State of Ohio.

**STATEMENT OF FACTS AND THE CASE**

{¶2}    On March 12, 2024, the Stark County Grand Jury indicted the appellant with one count of Endangering Children in violation of R.C. 2919.22(B)(1).

{¶3}    On September 9, 2024, a jury trial commenced.

{¶4}    At trial, A.K., the appellant's wife and mother of the victim, W.R., testified W.R. was born prematurely at twenty-nine weeks in December of 2022, following a C-

section necessitated by A.K.'s need for open-heart surgery. W.R. was non-responsive at birth and required seventeen minutes of resuscitation. She was diagnosed with achondroplasia, underdeveloped lungs, and suffered from brain bleeds. Due to severe apnea, she used nightly oxygen and a heart rate monitor. W.R. remained in the NICU for the first two months of her life.

{¶5} In April of 2023, A.K. brought W.R. to the emergency room for constipation. On or about April 27, 2023, after returning from work, W.R. was still fussy from the constipation. W.R. took her usual nap in the afternoon. The appellant took over W.R.'s care around 11:00 p.m. or 11:30 p.m., at which point W.R. appeared normal.

{¶6} Around 1:30 a.m., the appellant woke A.K. in a state of panic, reporting that something was wrong. W.R. had vomited on him, and her heart rate and oxygen levels were below normal. While A.K. called 9-1-1, the appellant gently rocked W.R. and tapped her feet in an effort to wake her. A.K. accompanied W.R. to the hospital while the appellant remained at home with their older child.

{¶7} At Aultman Hospital, W.R. was diagnosed with a brief resolved unexplained event (BRUE), possibly caused by a virus. Upon A.K.'s request for an MRI, Aultman Hospital transferred W.R. to Akron Children's Hospital's main campus. While admitted, W.R. underwent a full physical examination, an MRI, full-body X-rays, and blood testing. After a couple of days, hospital staff ceased updating A.K. due to a pending abuse investigation. A.K. spoke with two caseworkers from Stark County Job and Family Services ("the Agency").

{¶8} A.K. testified that when either parent became frustrated, they would hand W.R. off to the other. She told a detective that the appellant would bounce W.R. more

vigorously than she did but clarified he was not forceful or aggressive. When asked if the appellant could have shaken W.R., A.K. responded that it was unlikely but conceded that "nothing is impossible." She expressed concern that law enforcement and caseworkers misunderstood or mischaracterized her statements.

{¶9} R.R., W.R.'s older sibling, testified that while she was not responsible for W.R.'s care, she told a school caseworker that things at home were stressful due to the appellant's anger issues. R.R. also stated that she only felt safe when A.K. was present.

{¶10} Kimberly Gabel, an ongoing family services worker for the Agency, testified that the Agency received reports of W.R. having a subdural hematoma and multilayered retinal hemorrhaging. A physician at Akron Children's Hospital expressed concern that the injuries were inconsistent with W.R.'s medical conditions and appeared indicative of abuse, possibly during the time the appellant was alone with her. Based on these concerns, the Agency proposed a safety plan to ensure the appellant was supervised when with W.R., which A.K. declined. The Agency then sought and obtained temporary custody of W.R., placing her in foster care. The appellant did not attend W.R.'s medical appointments, citing the need for sleep due to work obligations, but failed to provide proof of employment when asked.

{¶11} Detective Derek Little testified that Akron Children's Hospital reported suspected child abuse of W.R. He was informed that while some brain bleeding may be consistent with achondroplasia, W.R.'s retinal hemorrhaging could only be caused by abusive head trauma. The suspected event occurred during the timeframe in which the appellant was solely responsible for W.R.'s care.

{¶12} Dr. Paul McPherson, a pediatrician at Akron Children's Hospital trained in recognizing abuse testified that he initially believed W.R. was low-risk. While the bleeding on the brain appeared possibly related to W.R.'s condition, the multilayered retinal hemorrhages were not. After reviewing all the evidence and ruling out accidental trauma, Dr. McPherson concluded, to a reasonable degree of medical certainty, that W.R.'s injuries were consistent with physical abuse. During his testimony, Dr. McPherson utilized demonstrative aids, a video and a photograph, to help him explain W.R.'s injuries and condition. The trial court clarified the video was not actual evidence, but did not issue a limiting instruction for the photograph.

{¶13} The State rested its case.

{¶14} For the appellant, Dr. Stephen Guertin, a child abuse pediatrician, testified that W.R.'s achondroplasia caused excess fluid between her brain and skull, making her brain more susceptible to movement and subdural hemorrhaging from normal care activities. He attributed W.R.'s injuries to her underlying condition, not to abuse.

{¶15} The appellant then testified. He explained that when feeling overwhelmed he would place W.R. in her bassinet and step away. On the night in question, around 1:00 a.m., he bounced W.R. on his knee in an attempt to relieve her constipation. She vomited, turned pale, and became unresponsive. The appellant then woke A.K., and she called 9-1-1. While waiting on the ambulance, the appellant tapped on W.R.'s feet in an attempt to wake her. The appellant joined A.K. and W.R. at the hospital later. For the first few days, medical staff assured the family that they had no concerns regarding abuse. The appellant and A.K. each speculated about possible causes of W.R.'s injuries, such as

lack of head control when W.R. lunges toward a drink or hitting her head against A.K.'s shoulder.

**{¶16}** The appellant rested.

**{¶17}** The jury found the appellant guilty of one count of Endangering Children in violation of R.C. 2919.22(B)(1).

**{¶18}** The appellant filed a timely notice of appeal and raises the following three assignments of error:

**{¶19}** "I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST THE APPELLANT."

**{¶20}** "II. THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶21}** "III. THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO PROVIDE THE JURY WITH A LIMITING INSTRUCTION THAT A DEMONSTRATIVE AID WAS NOT EVIDENCE."

## I., II.

**{¶22}** In the appellant's first and second assignments of error, the appellant argues that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.

## STANDARD OF REVIEW

**{¶23}** The appellant challenges his conviction on both manifest weight and sufficiency of the evidence grounds. Sufficiency of the evidence was addressed by the Supreme Court of Ohio in *State v. Worley*, 2021-Ohio-2207, ¶57:

The test for sufficiency of the evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4, and following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). " 'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs" R.C. 2901.05(E). A sufficiency-of-the-evidence challenge asks whether the evidence adduced at trial "is legally sufficient to support the jury verdict as a matter of law." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶219.

**{¶24}** Thus, a review of the constitutional sufficiency of the evidence to support a criminal conviction requires a court of appeals to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

**{¶25}** Manifest weight of the evidence, on the other hand, addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St. 3d 380 (1997). The Court stated:

Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the

issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*" (Emphasis added.) Black's, *supra*, at 1594.

*Id*. at 387.

**{¶26}** The Court stated further:

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the fact finder's resolution of the conflicting testimony. *Tibbs*, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

*Id*.

"* * *[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review Section 60, at 191-192 (1978).

**ANALYSIS**

{¶27} R.C. 2919.22(B) states, in pertinent part:

(B) No person shall do any of the following to a child under eighteen years of age or a child with a mental or physical disability under twenty-one years of age:

(1) Abuse the child[.]

{¶28} In the case sub judice, the State introduced medical evidence that W.R.'s injuries, specifically the subdural hematoma combined with multilayered retinal hemorrhaging, were not consistent with her underlying medical conditions or typical caregiving actions.

{¶29} Testimony further established that these injuries occurred while the appellant was solely responsible for W.R.'s care, and that the appellant exhibited frustration in caregiving. Although the appellant and his expert presented an alternative

theory of causation, it was the jury's role to assess credibility and weigh conflicting expert opinions.

**{¶30}** A rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. Our review of the record fails to persuade us that the jury lost its way or created a manifest miscarriage of justice. The verdict was not against the manifest weight of the evidence merely because the jury chose to believe the State's witnesses and version of events rather than the defense witnesses and theory of events. *State v. Andrews*, 2010-Ohio-6126, ¶28 (9th Dist.). We find the State presented sufficient evidence, and the appellant was not convicted against the manifest weight of the evidence.

**{¶31}** Accordingly, the appellant's first and second assignments of error are overruled.

### III.

**{¶32}** In the appellant's third assignment of error, the appellant argues that the trial court committed plain error by failing to provide the jury with a limiting instruction that a demonstrative aid was not evidence. We disagree.

### STANDARD OF REVIEW

**{¶33}** The appellant did not object to the demonstrative aid nor ask for a limiting instruction during trial. As such, we review this issue for plain error. Notice of plain error, pursuant to Crim.R. 52(B), "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978). An error affects substantial rights only if it changes the outcome of the trial. *State v. Spaulding*, 2016-Ohio-8126, ¶64.

**{¶34}** The Supreme Court of Ohio discussed the doctrine of plain error in *State v. Bailey*, 2022-Ohio-4407:

Under the plain-error doctrine, intervention by a reviewing court is warranted only under exceptional circumstances to prevent injustice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus ("Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice"). To prevail under the plain-error doctrine, Bailey must establish that "an error occurred, that the error was obvious, and that there is 'a reasonable *probability* that the error resulted in prejudice,' meaning that the error affected the outcome of the trial." (Emphasis added in *Rogers*.) *State v. McAlpin*, 169 Ohio St.3d 279, 2022-Ohio-1567, 204 N.E.3d 459, ¶66, quoting *Rogers* at ¶22; *see also State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶52.

The elements of the plain error doctrine are conjunctive: all three must apply to justify an appellate court's intervention. *State v. Barnes*, 94 Ohio st.3d 21, 27, 759 N.E.2d 1240 (2002) ("By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial").

*Id.* at ¶¶8-9. Thus, the appellant must establish that (1) an error occurred; (2) that the error was obvious; and, (3) that there is a reasonable probability that the error resulted in prejudice.

## ANALYSIS

**{¶35}** In the case sub judice, the demonstrative photograph was clearly identified by the prosecutor as not depicting W.R. and was presented solely to illustrate medical concepts. The appellant fails to point to anything in the record showing prejudice. Stating vague assertions that the jurors may have been confused about the weight to be placed on a demonstrative exhibit does not establish prejudice.

**{¶36}** Accordingly, the trial court did not commit plain error in failing to give a limiting instruction on the demonstrative photograph to the jury.

**{¶37}** The appellant's third assignment of error is overruled.

## CONCLUSION

**{¶38}** Based upon the foregoing, the decision of the Court of Common Pleas of Stark County, Ohio, is hereby affirmed.

**{¶39}** Costs to the appellant.

By: Baldwin, P.J.

Popham, J. and

Gormley, J. concur.